# Lowe v. Allen et al.

April 29, 1949.

As Modified and Extended on Denial of
Rehearing June 21, 1949.

M. C. Redwine for appellant.

M. E. Strange for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This controversy grows out of a dispute between appellant and appellees as to the correct boundary line between their two tracts of land, each of which is located in Powell County. Appellant began to erect a fence along the line "X," hereinafter referred to, when appellees in this action sought to enjoin him from doing so.

Each tract consists of about 100 acres. Some 50 years ago, or more, they were owned as one tract, when the then owner of the entire 200 acres divided it by an east and west line. The appellees are now the owners of the south tract and the appellant owns the north tract.

On October 26, 1946, after the filing of this action in the Powell circuit court by appellees against appellant, Harry C. Black, a surveyor, was agreed upon by the parties to make a survey showing the respective lines to which the parties claimed. He did so and his plat was filed as an exhibit in the case, but he did not testify in person for either party, though witnesses who accompanied him did testify, at least two of whom were former owners of the tract now claimed by appellant, and they located their south boundary at line "Y" on Black's

plat. No witness fixed the amount of land in dispute at more than from one to two acres and worth between $5 and $10 per acre.

Though Black did not testify in person, it was stipulated between the parties "that all of the persons agreed upon one point, that is marked now by a red figure 1, known and called a hickory on the point of the cliff; that he drew a picture of the lines as claimed by the parties, and same is attached hereto as part hereof, marked Black exhibit No. 1, and dated May 13, 1946. That the line from red 1 to red 2, called line Y in red, is the approximate location of the line identified by the person representing the plaintiffs. That the line from red 1 to line 3, called X in red, is the line that shows the approximate location of the line as claimed by the person representing the Lowe Heirs. That the line 1 to 4, and marked in red, is a line running due east from the agreed corner." It will thus be seen that he did not make a survey of the land of either present owner of the two tracts, but merely marked the dividing line as contended for by each party. The descriptions of each tract allegedly taken from their respective deeds are contained in the record. The description of appellees' tract is:

"Beginning at a Walnut tree, an agreed corner on the East side of Cat Creek; thence a northeast course to a white oak tree; corner to J. H. Lane; thence a North course to hollow, corner to Conner; thence West to a walnut at mouth of hollow; thence North with Conner's line to a walnut stump near County Road; thence West course with the Cat Creek Road to a cedar stake above the county road and near the house we live in; thence a West course to a hickory sapling on the point; thence with the point up to the point of the cliff; thence South with the cliff to a walnut between Jack Lowe and Allen; thence with the line an East course down the hill to a corner between Lowe and Allen near the Cat Creek Road; thence with said Road North to a corner at the lane between Allen and Daniels line that J. W. Conlee sold to Daniel around with Daniel's line to the beginning."

The description in appellant's deed is:

"Certain tract or parcel of land on the waters of

Cat Creek in Powell County, Kentucky, beginning at the corner of Z. T. Hall and Ingram Heirs; thence with the line of Ingram Heirs a western direction to the top of the ridge to a hickory tree; thence a southwestern direction with the center of the ridge to the J. M. and Rettie Welch line; thence with center of the ridge to the Algin Faulkner and wife line; thence with their line an easterly direction to Jeff Allen line; thence with his line down the ridge to the country road; thence with the County Road to the North end of the land near James Lane's house; and on the road leading to Bowen Station; thence a northwest direction to a beech tree in the hollow above James Holmes' house, a corner to H. H. Lane; thence a southwest direction with said Lane's line to a corner known as the Harvey Hall line; thence a southwesterly direction with said Hall's line to a sassafras and pine; known as the Ingram Heirs' corner; thence a southerly direction to the top of the ridge to a pine; thence with the ridge to a hickory; thence easterly to the beginning, containing about 100 acres more or less.''

It will be seen that nothing but general descriptions are given and neither of them contains any specific distances or courses, while the latter is mostly monuments and trees or saplings which have long since disappeared. The evidence was contradictory as to the location of some of the corners, but after a careful reading of all the testimony the case is undoubtedly one calling for this court's approval of the chancellor's finding of fact, since we in such conditions of the record will adopt and approve his judgment. That rule is that in equity cases the finding of the facts by the chancellor will be approved by us, unless we entertain more than a doubt as to the correctness of the court's conclusion.

A. J. Martin, a witness for appellee, who was 73 years of age when he gave his deposition, testified that he owned the northern 100 acres, now owned by appellant, for some 50 years and that line ''Y'' on Black's plat was the southern line of his tract and which appellees now claim as their northern line. He further testified that he cleared down to line ''Y,'' which he said was his south line, and planted some fruit trees on his side of it. He further testified that the then owners of the south tract owned, occupied and claimed title to that line (Y).

Other witnesses, including appellees, testified that the owners of the southern tract built a tenant house on the small acreage now in contest, and it was occupied by tenants, with a portion of cleared land around it, for as much as 16 years before the filing of this action, although some witnesses stated that they thought the house had not been built quite that long. However, the testimony on that point is amply sufficient to justify the conclusion by the chancellor that the disputed area had been adversely claimed and occupied by the owners of appellees' tract for a time sufficient to acquire a prescriptive title thereto, even though line "X" on Black's plat may have been the one originally fixed by the owner who divided the entire 200 acres. The controversy could not be any more clarified by a greater extension of this opinion in detailing the evidence as testified to by the various witnesses, but which would add nothing to the correct disposition of this appeal.

Wherefore, the judgment is affirmed.